**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KIM WEHRENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 487 |
| ) | |
| FEDERAL SIGNAL CORP. and FEDERAL ) | |
| SIGNAL CORP. SUPPLEMENTAL ) | |
| SAVINGS AND INVESTMENT PLAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

     Kim Wehrenberg, the former general counsel of Federal Signal Corporation (FSC), has sued FSC and the Federal Signal Corporation Supplemental Savings and Investment Plan (Plan) under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). The Plan's assets consisted of FSC stock. Wehrenberg asked that the benefits due to him be distributed in cash, which would have required the Plan administrators to liquidate shares of FSC stock. The Plan administrators stated that they could not honor this request due to the amount of stock that it would have to liquidate (165,000 shares) and due to "timing considerations . . ., including considerations related to the Federal securities laws." Pl's Resp. to Defs' Mot. for Protective Order, Ex. D at 1.

     Wehrenberg says that the administrators acted contrary to the terms of the Plan and that they denied his request for a cash distribution because they were aware that an upcoming report of FSC's quarterly earnings would show worse than expected results and feared that if they sold

the stock as Wehrenberg asked, they and FSC would risk liability for violating the securities laws. Wehrenberg contends (as the Court will explain later in this ruling) that this fear was unfounded and that in any event, the administrators were putting their own interests ahead of his interest as a Plan beneficiary. Part of the reason for FSC and the trustees' heightened concern about the securities laws, Wehrenberg contends, is that FSC recently had terminated its chief executive officer for alleged insider trading after Wehrenberg had reported his suspicions about the executive.

Wehrenberg thereafter received a distribution in the form of FSC stock. He says that the Plan administrators' reference to the securities laws had put him on notice of adverse inside information and that as a result, he could not sell the stock until after the quarterly earnings report was publicly released. In the interim, he says, the stock's price dropped significantly; by the time he was able to sell it, it was worth $400,000 less than its market value on the day it was distributed to him. Wehrenberg has sued under ERISA to recover for his losses. He also makes other claims, but they are not at issue in the motion addressed in this decision.

FSC and the Plan have moved for a protective order precluding discovery relating to Wehrenberg's ERISA claim beyond what they characterize as the "administrative record" that the Plan administrators considered in denying his request to be paid in cash rather than in stock. For the reasons stated below, the Court denies the defendants' motion, albeit with some limitations.

## Discussion

Defendants argue that discovery on the ERISA claim is inappropriate because the Court's decision will be limited to determining whether, based on the materials considered by the Plan

administrators, the challenged decision was arbitrary and capricious. As a general rule, when an ERISA claim is governed by the "arbitrary and capricious" standard, discovery is inappropriate. *See, e.g., Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 982 (7th Cir. 1999). If, on the other hand, the claim is subject to *de novo* review by a court, discovery beyond the materials considered by the Plan administrator is appropriate. *See, e.g., id.* The first issue for the Court's determination is thus the appropriate standard of review.

The standard of review depends upon the discretion granted to the plan administrator in the plan documents. *See, e.g., Semien v. Life Ins. Co. of N. Amer.,* 436 F.3d 805, 810 (7th Cir. 2006). A denial of benefits is reviewed *de novo* unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). To rebut the presumption of plenary review, the plan documents must clearly and unequivocally state that discretionary authority is given to the administrator. *See, e.g., Semien,* 436 F.3d at 810.

The plan documents in this case meet the standard established in *Firestone Tire* for rebutting the presumption of *de novo* review. The Plan at issue in this case incorporates the terms of FSC's 401(k) plan, which provides that the administrator has the authority "[t]o determine all questions of interpretation of policy in a manner consistent with the Plan's documents and the Plan Administrator's construction or determination in good faith shall be conclusive and binding on all persons except as otherwise provided herein or by law." Defs' Mot. for Protective Order, Ex. B § 7.03(C)(1). The Seventh Circuit has twice held language virtually identical to this to confer discretionary authority within the meaning of *Firestone Tire*. *See Lister v. Stark,* 942 F.2d 1183, 1185-87 (7th Cir. 1991) (plan provision stating that

3

administrator's determinations "shall be final and binding upon all persons hereunder" was sufficient to confer discretionary authority under *Firestone Tire*); *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1141 (7th Cir. 1990) (plan provisions stating that good faith construction by trustees is final and binding and that trustees' decisions on disputed matters are binding were sufficient to confer discretionary authority under *Firestone Tire*). The court sees nothing in the Seventh Circuit's more recent decisions to suggest that *Lister* and *Exbom* are no longer good law.

The Seventh Circuit stated in *Perlman,* and reaffirmed in *Semien,* that "when there can be no doubt that the application [for benefits] was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency." *Perlman,* 195 F.3d at 982; *Semien,* 436 F.3d at 813. Wehrenberg appears to argue that there was no "genuine evaluation" of his request for a cash distribution, but the Court disagrees, at least based on the present record. The Plan administrators consulted outside counsel; their initial decision was explained, albeit briefly, in writing; and there was further review at Wehrenberg's request, resulting in a reaffirmation of the initial decision that was extensively justified in writing.

Wehrenberg argues that even if the Court's review is limited to the materials that were considered by the Plan administrators, the Court still will have to know what materials the administrators considered. That, of course, goes without saying. The Court also agrees with Wehrenberg's contention that it is unclear at this point in the litigation exactly what the administrators considered. Throughout this case, defendants have consistently referred to the

4

"administrative record" as though there was a defined "record" of the type that would exist, for example, in a review of the Social Security Administration's denial of a claim for disability benefits. To the contrary, the Court agrees with Wehrenberg that at the present time, it is less than clear exactly what was considered in connection with either the initial denial of cash distribution or the reaffirmation of that decision upon internal review.

For this reason, Wehrenberg is entitled to conduct appropriate discovery to determine exactly what materials and evidence the Plan administrator considered. In this regard, Wehrenberg is entitled to the decision makers' sworn verification of what documents and other evidence or input they considered. It is conceivable that such discovery has been completed or nearly completed. The Court leaves for later determination what, if anything, Wehrenberg is entitled to beyond the sworn verification that the Court has said is required.

The Seventh Circuit also stated in *Semien* that even if the plan documents confer discretionary authority on the plan administrator, discovery beyond the materials the administrator considered is appropriate if the claimant "identif[ies] a specific conflict of interest or instance of misconduct" by the administrator and makes "a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Semien,* 436 F.3d at 815.

Wehrenberg contends that he has made the showing needed under *Semien* to entitle him to additional discovery. He argues, as discussed earlier, that the Plan administrators were looking out for their own interests, not his, when they rejected his request for a cash distribution. Defendants argue that the terms of the Plan made it clear that distributions to beneficiaries were to be made only in stock, not in cash. The Plan terms upon which they rely, however, are a bit

5

less than crystal clear in this regard.

The Plan was an "excess benefits plan" maintained, as permitted by ERISA, to provide benefits that exceeded the limitations on employer contributions imposed by the Internal Revenue Code for deferred compensation plans. Defs' Mot. for Protective Order, Ex. A § 1.2. Participation was limited to "key employee[s]" who elected to participate. *Id.* § 2.1.

Under the terms of the Plan, if FSC's matching contributions under the regular deferred compensation plan were reduced due to Internal Revenue Code limitations, FSC was required to credit to an account on its books an amount determined pursuant to a formula provided in the Plan. *Id.* § 2.3. As originally adopted, the Plan contained the following terms regarding "Funding" and "Benefit Payments":

> **2.6** **Funding.** All amounts paid under this Plan shall be paid in cash from the general assets of the Participant's Employer. Such amounts shall be reflected on the accounting records of the Employer but any trust, custodial or escrow account shall comply with Revenue Procedure 92-64. No employee shall have any right, title or interest whatever in or to any investment reserves, accounts or funds that the Employer may purchase, establish or accumulate to aid in providing the benefits under this Plan. Nothing contained in this Plan, and no action taken pursuant to its provision [sic], shall create a trust or fiduciary relationship of any kind between an Employer or an employee or any other person. Neither an employee or beneficiary of an employee shall acquire any interest greater than that of an unsecured creditors and the plan constitute a mere promise of the Employer to make benefit payments in the future.
>
> **2.7** **Benefit Payments.** No payments shall be made to a Participant under this Plan prior to his termination of employment except for financial hardship as determined under the Savings Plan. At termination of employment, benefits shall become payable by the Employer in any form of payment that the Participant may elect, subject to the consent of the Administrative Committee and pursuant to is [sic] rules. The Employer may withhold from payment any taxes required to be withheld and such sum as the Employer may reasonably estimate as necessary to cover any taxes for which the Employer may be liable and which may be assessed with regard to such payment.

*Id.* §§ 2.6 & 2.7.

The parties agree that at some unspecified date preceding Wehrenberg's claim, the Administrative Committee responsible for administering the Plan (of which Wehrenberg was then a member) amended the Plan to provide that its investments would be limited to FSC stock and that "benefits paid under the Plan pursuant to Section 2.6 of the Plan shall be in the form of Federal Signal Corporation Stock." *Id.,* Consent in Lieu of Special Meeting (undated). This, according to defendants, required the Plan administrators to reject Wehrenberg's request to be paid in cash rather than in FSC stock.

Wehrenberg points out, however, that section 2.6 of the Plan concerns FSC's contributions to the Plan, not benefit payments, and that the amendment made no reference to or change in section 2.7, which specifically permitted participants to elect the form in which benefits were paid, subject to the consent of the Administrative Committee. Even so, a reasonable fact finder could determine that in light of the amendment's specific reference to "benefit payments," the Administrative Committee's intention was to modify how benefit payments were to be made, not merely the composition of the Plan's assets.

On the other hand, it is undisputed that in two other situations preceding Wehrenberg's claim and postdating the Plan amendment, the Administrative Committee permitted benefits to be paid in cash. Wehrenberg argues that this indicates that the amendment was not intended to affect how benefits were paid. He argues that the different treatment given to his claim resulted from the administrators' alleged conflict of interest and that their determination was arbitrary and capricious.

The Court will not determine at this time which side's interpretation of the Plan amendments is correct; that is a matter more appropriately determined at a later stage of the case.

7

For present purposes, however, the Court is not prepared to reject Wehrenberg's interpretation out of hand. In addition, whatever the proper interpretation, the fact that Plan administrators had previously allowed benefits to be paid in cash gives Wehrenberg an opening to argue that defendants rejected his request for a cash distribution because of a conflict of interest.[1]

According to Wehrenberg, the available evidence indicates that the Plan administrators acted as they did out of concern for their own potential liability under the securities laws and thus labored under a conflict of interest. As noted earlier, in communicating the denial of Wehrenberg's request for a cash distribution, the Plan's counsel said that one of the factors considered was that his request was "complicated by timing considerations related to [his] request, including considerations related to the Federal securities laws." Pl's Resp. to Defs' Mot. for Protective Order, Ex. D at 1. This followed an e-mail to Wehrenberg by a FSC representative stating that "[g]iven the nature and timing of [Wehrenberg's] request [for a cash distribution], we felt it was important for Federal Signal to obtain a review of the transaction by outside counsel." *Id.*, Ex. G. Though the Court agrees with defendants that review of the matter by outside counsel is likely a factor cutting a against a finding that the Plan acted arbitrarily and capriciously, *see Hightshue v. AIG Life Ins. Co.,* 135 F.3d 1144, 1148 (7th Cir. 1998), the relevant point for purposes of the present inquiry is that one reasonably could determine that the Plan administrators had possible securities law liability in mind when they denied Wehrenberg's request for a cash distribution.

---

[1] Even if defendants carry the day regarding the issue of the construction of the Plan amendment, Wehrenberg may be able to argue that the differential treatment of different participants' claims with regard to the cash-or-stock issue supports a contention that the Plan's rejection of his request for cash was arbitrary and capricious. That, however, is an issue for another day.

8

Wehrenberg has also argued, and defendants do not seriously dispute (at least in the current exchange), that even if the Plan administrators had "inside" knowledge that would have prohibited them from buying or selling FSC stock, this would not have prohibited them from selling stock pursuant to the directions of someone who, like Wehrenberg, had no such knowledge. Under the securities laws, a trade is prohibited in these circumstances only if there is a causal connection between the possession of inside information and the decision to sell or buy securities. *See, e.g., SEC v. Lipson,* 278 F.3d 656, 660 (7th Cir. 2002).

When these points are considered together, they give Wehrenberg a viable argument that the administrators acted as they did because were gunshy due to FSC's then-recent experience regarding insider trading by the company's CEO.[2] The Court hastens to add that it makes no determination that this actually played a role in the administrators' denial of Wehrenberg's request for a cash distribution; that determination, like other previously cited, is appropriately made at a later stage of the case. For present purposes, however, the Court concludes that Wehrenberg has identified a specific conflict of interest on the part of the Plan administrators, specifically, that they put their own interest in avoiding even the appearance of a securities law violation ahead of Wehrenberg's arguable right to a cash distribution, and good cause to believe that limited discovery will reveal a defect in the administrators' decision on his claim. This does not mean that Wehrenberg has *proven* a conflict, let alone that a conflict affected his claim. *Semien,* however, does not require a plaintiff to demonstrate that a plan administrator's decision

---

[2] Defendants contend that the earlier determinations were made to carry out commitments that Wehrenberg himself made when he was FSC's general counsel. They do not, however, support this assertion with evidence. In any event, the Court cannot say, at least at this stage of the case, that the proposition that Wehrenberg himself was behind the prior decisions is outcome-determinative.

9

was actually tainted in order to obtain discovery; if it did, it would be virtually a dead letter, as it would be the rare plaintiff indeed who could prove such a thing without doing any discovery.

Any discovery that Wehrenberg requests pursuant to this ruling must be aimed, and aimed directly, at determining whether the alleged conflict impacted the administrators' decision. Beyond that general admonition, the Court is unwilling to declare in a vacuum exactly where the line between appropriate and inappropriate inquiries lies. In other words, some context, and some specifics, will be required. Wehrenberg and his counsel are cautioned, however, that the relatively narrow window that the Court has concluded is open can and will close very quickly if they take the Court's ruling as giving them free rein.

**Conclusion**

For the reasons stated above, the Court denies defendants' motion for a protective order. Plaintiff is entitled to request discovery consistent with this ruling.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 23, 2007